First case of the morning, which is number 2510692, Ann Johnson v. Royal Caribbean Cruises Ltd. You may begin when you're ready, Mr. Speck. Thank you, Your Honor. May it please the Court, Brock Speck on behalf of the appellant, Ann Johnson. As you can see, I've set aside three minutes of my time for rebuttal. The question on objective prudence under ERISA is what would a prudent fiduciary in the defendant's position have done? Here, would a prudent fiduciary have chosen to replace the plan's Vanguard target date funds with target date funds managed by Russell? This Court, in the Pizarro v. Home Depot case, held that answering this question requires a granular analysis tailored to the aims and characteristics of the plan. That granular analysis did not happen here. The District Court refused to consider any evidence about the plan's objectives. Pizarro v. Home Depot also identifies several other categories of evidence that are relevant to the objective prudence analysis. And again, the District Court failed to consider the evidence we submitted on those points. Instead, the District Court relied solely on the performance of the Russell target date funds against the benchmark that Russell had chosen for itself. No case holds that this type of a comparison is the sole and exclusive test of objective prudence. Can I ask you to address something with the target date funds? I mean, a target date fund is just a collection of other funds. Am I to understand right that the problem with the Russell funds is that they're too conservative? Is that the underlying problem that you've identified? A problem might be a loaded word, but the reason why the funds are a bad fit for this plan is based on the construction of the funds and a mismatch between both the committees, the Royal Caribbean Committee's philosophy for investments for their plan, and also a more quantitative mismatch between the objectives of the target date funds and the participant population characteristics, the demographic characteristics of the participant population. So I'll take those two in turn. First of all, at the very first meeting that this committee has with Russell after they make the decision to switch, the committee realizes, and it's in the record, they say they made a terrible or a bad fiduciary decision. There's two reasons for that. First of all, according to the record, the committee's investment philosophy, their risk management philosophy, does not match Russell's glide path philosophy. Whether it's a conservative or an aggressive fund turns on the glide path, how quickly it changes from mostly equities or more aggressive securities to fixed income or more conservative securities. The committee had a philosophy on this. It did not match Russell's approach. So that's number one. Number two, as a product of that aggressive and conservative balance and when it happens, plans are different, participant populations are different, target date funds are different. One of the goals when selecting a target date fund is finding a fund that matches your participant population. This population was underfunded. That means they need greater growth in their retirement savings in order to have income replacement at retirement. The Russell target date funds were a bad fit for this plan demographic because they did not allow for that growth. And in fact, Russell did an analysis, a quantitative analysis comparing its funds to the incumbent Vanguard funds. And what that analysis showed is that the Vanguard funds, the specific construction of those funds, had a higher chance of meeting the participant's income replacement needs. Participants in this plan, not some sort of generic average participant. I guess I understand the point you're making, but here's I guess the problem I'm having, is that if the Russell funds are like not the right funds because they convert to equities to bonds at an earlier rate than some other funds might, how are we comparing apples to apples if we're comparing a fund that converts from equities to bonds when someone is 50 versus a fund that converts from equities to bonds when someone is 75? They're both just funds that have equities and bonds in them, I guess. That's right. So there's two answers to that. So first of all, the apples to oranges analogy, I think it's a little bit strained. But if you want to call the Russell funds an apple and the Vanguard funds an orange, there are differences. And the goal here is to find whether it's an apple or an orange that best fits the needs of the plan. And Pizarro is clear, you have to consider the character and aims of the plan. So to the extent that there are differences and that these really are apples and oranges, you've got to look at, well, what does this plan need, an apple or an orange? But Pizarro also does talk about the differences in risk profiles of funds and says, by just comparing one fund to another, if that's all you're relying on, and to be clear, that's not what we're relying on here. We submitted these comparisons for purposes of establishing loss, not for the objective prudence or the causation element. We had submitted evidence that Pizarro talks about for causation. So this is their case. This is not our case that we submitted. But having said that, Pizarro talks about when you're looking at different target date funds, you can correct for risk. You can do a risk-adjusted analysis. In Pizarro, the plan's advisor, Ann Hewitt, did this sort of risk-adjusted analysis where you correct for these differences and you have an apples-to-apples comparison. We submitted evidence of a risk-adjusted analysis of the funds, and what that evidence showed is that the Vanguard funds provided greater returns, took less risk, and cost less. So even on the Pizarro sort of correcting for the apples-to-oranges and making an apples-to-apples comparison, we submitted evidence on that point that showed that the Vanguard target date funds were superior and that a prudent fiduciary would not have chosen lower returns, higher risk, and higher fees. There's no reason to do that. So even correcting for that apples-to-oranges issue, we still have evidence here that should have prevented the entry of summary judgment. But, of course, again, the district court didn't consider any of this evidence. The district court just looked at the performance of the Russell funds against the benchmark Russell had chosen. Pizarro talks about looking at benchmarks, but Pizarro talks about looking at the benchmarks Aon Hewitt, the advisor in that case, the fiduciary's investment advisor, chose. So effectively the difference between looking at the benchmark the fiduciary chose for the manager, which was the case in Pizarro, versus here the district court looking at the benchmark Russell chose for itself. That says nothing about whether the Russell funds are meeting the income replacement needs of this plan, whether they're suitable for this plan, or even whether they're doing particularly well. Anyone who's allowed to choose their own performance metric is likely going to meet that metric because you're picking your target, and it's a moving target. Whenever Russell changes the underlying asset allocation of the funds, the asset allocation of the composite or custom benchmark changes. So it says nothing about whether the funds are meeting their objective over the long term because every time they change their strategy, they change the benchmark. It also says nothing about whether the funds are an appropriate fit for this plan, and for the reasons I've talked about, the evidence shows they were not. Can I ask one more question? So the standard, the prudent investor standard I think is the standard that we're going, we're applying here. Could you just address the issue that the other side raises that, you know, this is Russell. This is a well-established brand. I mean, these are, like, widely available target date funds. They didn't, you know, give the money. They didn't take the money to Vegas and put it on black, right? So what do you say about that? Yeah, Pizarro talks about the, I call it popularity, whether other fiduciaries are making the same decision. And so that's evidence of what a prudent fiduciary would do, the way that other fiduciaries in similar circumstances are managing their plans. And in this case, I would push back on the notion that the Russell funds are popular, that this is a popular manager. Morningstar, which is the leading research and analysis firm in the industry, does analyst reports on target date funds. These target date funds in this case were not even ranked by Russell. They weren't even rated. But another set of target date funds that Russell offers, managed by the same portfolio manager, using the same glide path, the same strategy, the same asset allocation. Morningstar gave that series of target date funds its worst ranking, a negative ranking, a do not invest in this fund ranking. Vanguard, Morningstar rated the highest ranking, a gold ranking. So it's a five-point standard. Vanguard is a five out of five. Russell is a one out of five, a negative ranking. In terms of the number of clients, this was never a popular fund series. Russell never had more than 12 clients. And that was years before the time when Royal Caribbean added Russell to the plan. In the year before Royal Caribbean added Russell, the two biggest clients in these funds left Russell and moved their plans to Vanguard. The same year that Royal Caribbean decided to put the Russell funds in its plan, a third client left Russell and also moved to Vanguard. So these are not popular funds. These are not widely utilized. These are funds other fiduciaries are running away from, not adding to their plans. Let me ask you, very recently the Supreme Court granted cert in a case called Anderson v. Intel Corporation. How do you expect that the Supreme Court's ruling in that case will affect this case, if it will? Of course every Supreme Court ruling is important, but I don't think Anderson is going to have much bearing on this case. Anderson deals with the pleading standards. We're well past the pleading stage. We have evidence here. One reason some of this gets confused is because at the pleading stage, the test of prudence is a test of process. Did the fiduciary follow a reasonable process? At the pleading stage, a plaintiff often has no idea what process was used. They just know the outcome of the process. And so what courts have recognized is that to state a plausible claim, you can create an inference of an imprudent process by showing a particularly bad result. Basically garbage in, garbage out. If the result is bad and you've got enough allegations that are supported by enough facts, you can support an inference of an imprudent process. And that's where a lot of these benchmark comparisons come into play and where this apples to oranges concept first came about. None of that is what we're talking about here. Here we're talking about actual evidence. We're at summary judgment where we've done discovery. We know the process was bad. That's not even at issue in this case because the district court did not grant their motion on process. Instead, the district court granted the motion on causation or objective prudence. So for all those reasons, I don't think the Anderson case is going to be particularly important here. It deals with a different issue. It deals with the pleading standards. It doesn't deal with the objective prudence prong on summary judgment. It's going to talk about how you create an inference at the front end in your pleading. So these were not popular funds. I talked about the funds and the comparison that was done on a risk-adjusted basis. All that is entirely consistent with the approach that this court adopted in Pizarro. Another point about the custom benchmark, I think this court's decision in the GIW Industries case really decides the custom benchmark issue. In that case, this court held that you do not analyze prudence in the abstract. You have to look at it in the context of the plan. That didn't happen here. And for that reason, summary judgment should be reversed. Thank you, Your Honors. Mr. Golombik. Good morning. Lars Golombik on behalf of the Appalachian Rural Caribbean Cruises and the Rural Caribbean Cruises Investment Committee. I just want to respond to a couple comments made by Appellant's Counsel. First, with respect to the Pizarro case and with respect to the custom benchmark, Appellant's Counsel suggested that that was a custom benchmark created by someone else. It was trying to draw a distinction between the BlackRock, those BlackRock target-date funds, and the Russell target-date funds, and what custom benchmark was used. In Pizarro at 111F4 at pinpoint site 1180, the court says, Aeon Hewitt benchmarked each fund against a custom index created by BlackRock. So too here. What the district court found below is that the appropriate apples-to-apples comparison was looking at the custom benchmark created by Russell against the Russell target-date funds. And on that basis, the district court found that the performance was in line with or exceeded expectations at the time that Rural Caribbean selected the investment. Even thereafter, in the three and a half years that Rural Caribbean kept the Russell target-date funds on its investment lineup, the percentage of underperformance ranged from 0.38% to 0.97% in that very short snapshot time period. So the district court logically found that that did not constitute material underperformance. A couple other comments on appellate counsel's argument. Appellate counsel suggested the district court found that there was a deficient process. Not true. The court actually went out of its way to say the record suggests a prudent process. But in fact, the district court didn't rule on that basis. The district court ruled only on the question of loss causation. In other words, were the Russell target-date funds objectively prudent? Is the district court correct when it quoted the district court's opinion in Pizarro that, quote, determining whether a loss occurred as a result of the fiduciary's breach of duty requires a comparison between the challenge plan's actual performance and performance that would have otherwise occurred, e.g., for example, performance according to models a court accepts as reasonable? Yeah, I think that the district court is correct in following Pizarro at the district court level, Judge Grinsberg, and at the circuit court level, that the challenged investment has to be compared on an apples-to-apples basis with an appropriate comparator. Exactly. No other evidence is relevant to the prudent investor standard other than comparison evidence. In other words, if there's not comparison evidence, as a matter of law, you win and the other side loses? Well, it's a great question, Judge Luck, and this would have been part of my opening, but for the fact that I wanted to respond to some arguments from the other side. Pizarro makes clear that there's two elements that need to be satisfied, and I think what you're getting at is the first element, that the fiduciary process was deficient in evaluating and monitoring a plan's investment. The second question, then, is assuming, which the district court did here, assuming there's a deficient process, did that result in losses to the plan, consistent with Section 409A of ERISA? So it's a question of loss causation, and to do that, the Pizarro standard sets forth a very specific standard applied in the Pizarro case at the district court level in the 11th Circuit. They looked at the BlackRock target date funds, and they compared it to a target date fund custom index created by BlackRock. So is the answer to my question yes? If there's not, let's assume, for whatever reason, at summary judgment, your opposing counsel, your opposing party, presents no comparison evidence at all, just throws up its hand to any comparison evidence, but presents lots of other evidence, is that a failure as a matter of law? It is a failure. On loss causation? It is a failure as a matter of law. The plaintiff, as Pizarro makes clear, bears that burden through trial. So comparison evidence is required at the summary judgment stage? Correct, and what the record presented at summary judgment was what appellant wanted to compare it to, which is to the Vanguard target date funds or the American funds versus what Royal Caribbean and the other defendants urged. What I'm trying to drive at is, let's say I agree with you that they have not presented apples to apple comparison, that instead they presented apple to orange comparison. My question is, do you win as a result of that conclusion, or must I also determine whether they are correct on pages 33 and 34 of their brief, and as they discussed up here, that there is other evidence outside of comparison that show that a reasonably prudent investor would not have invested in this fund? For example, they talked about the Morningstar analysis. That's just one piece of evidence among others. Which is correct, and what do we need to do, and how do we need to evaluate it? Those are my questions. Yeah, the appropriate inquiry on the second prong is looking at the challenge fund vis-a-vis an appropriate apples to apples benchmark. Let me ask you to address this hypothetical. Let's say that this is a prudent investor situation, and the investor does in fact say, we're going to take all the money, and we're going to go to Vegas, and we're going to put it on black, and they lose all the money. What would be the comparison when the lawsuit happens? You're going to compare that to crypto probably. No, I mean seriously, what would be the apples to apples? Do you need to – what is – would you have to compare it to some other gambling activity, or would you just be able to say, look, like, you know, that is something that you're not allowed to do, like that violates prudent investor. Yeah, so what Pizarro does is it allows for and recognizes Supreme Court's holding in Hughes, which allows for a range of reasonable judgments that the fiduciary may make in making an investment decision. So is putting it out on black on behalf of the plan in Vegas within the range of reasonable judgments? It doesn't sound like it on its face. So I think that's the point here. What is the range of reasonable judgments? In the case of the Russell Target Aid funds, to your point, Judge Luck, I don't think you have to go looking at subjective views. I don't think you should. As it turns out, the record shows that the investment consultant for the plan in surveying the committee found that the committee was, quote, But that's not evidence that needs to be considered or should be considered. And what the plaintiff's or appellant is trying to do here is they're trying to say, because there was a different Target Aid fund in the plan preceding the Russell Target Aid fund, that should be the fund that we should compare it to. And among other things, the appellant says our expert came to that conclusion. That's part of their expert opinion. But again, that's collapsing the question of a prudent process. Should a committee undertaking an RFP look at Vanguard and the returns they were having vis-a-vis Russell versus on its face, is the Russell Target Aid fund objectively prudent compared to an apples-to-apples comparison? The Vanguard fund clearly is not an apples-to-apples comparison. The Vanguard is made up entirely of passive funds. Can you show me where in the circuit court opinion in Pizarro that the best place in the opinion and the best language for you in the opinion where we required there to be an apples-to-apples comparison in order to make a loss causation determination? Well, the Pizarro court throughout the opinion talks about looking at an investment and comparing it to an investment with like aims objectives. Wasn't that the only evidence it had before it? In other words, are we mixing the fact that that happened to be the evidence in the case with a requirement that that must be the evidence in the case? Those are two different things, I think, right? I agree those are two different things, and Pizarro, in my reading of the opinion, requires evidence of an apples-to-apples comparison. Can you just show me the best language for you? I do not have the opinion in front of me. I'm happy to look through it if you want. Oh, it's all right. We'll take a good look at it. Yeah. No, to me, you know, if we're applying Pizarro's ruling, at least as I interpret it, to the facts here, you have a different apples-to-apples comparison. And Pizarro throughout talks about apples-to-apples versus apples-to-oranges. Vanguard, based on the makeup of the securities, the glide path, Vanguard is a through target date, meaning it's going to try to hit the target date and then go past it, meaning it's going to be a more aggressive investment than the Russell target date funds. And the Russell target date funds had a higher concentration of emerging markets and a lower concentration of equities as compared to Vanguard. So it is not an apples-to-apples comparison. And to hold otherwise and to say we must insist on comparing, objectively prudent, not process, but objective prudence, if I'm required to then look at Vanguard and that's my test, then as a fiduciary who is permitted to have a range of reasonable judgments, I'm always going to be judged by my last decision. I can't now have a different investment decision with different goals and different aims. I'm now constantly being judged by what I did before. That is not an appropriate test for a fiduciary. Same question. I asked your opponent about the Anderson case in the Supreme Court. Should we wait for the Supreme Court's decision in that case? I actually agree with my appellant certainly outside the courtroom a lot more than you might think. But I agree with him on this one. I do not think that Anderson is applicable. It is dealing with a meaningful benchmark standard at the pleading stage. And we have a summary judgment ruling based on evidence. I don't think it's applicable. And I don't think the court needs to wait for the Supreme Court to issue a ruling. Many of the court decisions that appellant cites to in trying to support an argument that one must apply on an apples-to-apples basis Vanguard to the Russell Target Date Fund are really court decisions getting to the calculation of damages. So, again, liability and the elements of liability are breach and loss causation resulting in damages. The measuring stick for damages may be a different measuring stick than compared to whether an investment decision caused losses to the plan. And so we think all of those cases are inapplicable here. And, again, I don't think... I keep going back to you, Judge, because you brought up the question. I don't think we need to go there from an evidentiary standpoint. But you have to consider what the investment committee, when it made the decision, the context in which it was doing so. This was in 2014 and 2015. The Great Recession just had occurred in 2008. So investment committees of plans all across the country were deciding what target date funds to use. When their recent experience had been the equity markets had gone down. They had tanked. And the Russell Target Date Fund was specifically constructed to counter that. They point to other evidence. So, for example, they point to a draft policy statement, which indicated that the goal was to find an investment option in the 50th percentile of their peer group over the last three to five years. Russell would not have qualified under that rubric. So they are looking. There is some evidence which indicates, when you compare it to what the committee was looking at, that Russell was not within that. What do we do with that evidence? Well, it's a draft policy statement that was never finalized. So there's drafts of many things. I do not think that is actual evidence. And the courts certainly didn't find that in the district court below. But, again, the Russell Target Date Fund, its goal was capital asset preservation. It was conservative. In the wake of the 2008 Great Recession, that was the type of target date fund that was being developed by many financial services providers. What about the Morningstar ranking? Well, Plaintiff's own expert on the Morningstar ranking, in his expert deposition, said, I don't use the Morningstar ranking. I don't use it for purposes of evaluating investments. So I don't think that's any point of comparison to talk about Russell's popularity, if you will, vis-à-vis Vanguard. Thank you.  Two points on rebuttal, and I'll start with Judge Luck, where you started with your question about whether comparison evidence is required. The district court held, and my friend would urge this court to hold, that this comparison to the benchmark is the only thing that matters. That is the single dispositive necessary element of the claim. That's not what this court held in Pizarro. Before even getting to any of that discussion in Pizarro, this court talks about fit with the character names of the plan. Next, the court talks about the popularity of the BlackRock TDFs, how many other plans were using those TDFs. Next, this court talked about industry rankings. How do firms like Morningstar and others in the industry regard these products? Then, fourth in the list, the court gets to this benchmark comparison. So I guess everything else was superfluous. The court didn't need to talk about any of those other factors. I don't think that that was what this court intended, and I don't think that's the law. And as I said, there is no case, certainly no circuit court case, that holds that that is the law. When Pizarro does talk about performance, it talks about risk-adjusted performance, not just the raw performance against the benchmark that the fund manager chose for itself. It talks about risk performance. Number four in the list, but risk-adjusted. We put in evidence here that the risk-adjusted performance of this product was inferior. And Judge Brasher, to your question about going to Vegas, the hypothetical, that's exactly why the apples, just sort of reflexive, blindly falling back on this apples-to-oranges analogy, is not helpful, because sometimes the apple is imprudent. And if you're comparing an imprudent decision, like going to Vegas, with an apple, another apple, you're comparing it to another imprudent decision, like crypto. It doesn't make sense. Yeah, and that's kind of the way I understand your argument. I mean, just correct me if I'm wrong. I mean, your argument is that having a, and I'm just going to say conservative, having a super-conservative target date fund, switching to that fund was an imprudent decision. For this plan, I'd push back on super-conservative, by the way. Vanguard actually has better downside protection, takes less risk. So certainly Russell will come in and claim it's a conservative product, but if you actually do a quantitative analysis of the product, which there's evidence in the record on this point, it's not conservative relative to Vanguard. Vanguard provides better downside protection than Russell. So even that is a faulty premise. But the question is, if you do that quantitative analysis, which is the better fit for this plan? Pizarro is clear. That is an important factor you have to consider in the objective prudence analysis. The district court did not do it. My friends in their briefing don't do it either. But this court has already said it has to be done. Thank you. Thank you. Thank you, counsel.